McDONALD'S CORPORATION,
Appellant,

v.

OKLAHOMA TAX COMMISSION,
Appellee.

No. 49918.

Supreme Court of Oklahoma.

April 26, 1977.

Gregory K. Geuther, Chicago, Ill., and Kent F. Frates, Oklahoma City, for appellant.

Donald B. Nevard, General Counsel, Oklahoma Tax Commission, and Stanley J. Alexander, Oklahoma City, for appellee.

BARNES, Justice:

This is an appeal from Oklahoma Tax Commission Order No. 63335, issued June 14, 1976, and styled "In the Matter of the Claim for Refund of Sales and/or Use Tax Paid by McDonald's Corporation, Case No. 3734," denying claim for refund filed by Appellant, McDonald's Corporation, and finding that Appellant was not primarily engaged in manufacturing or processing and thus not within the exemption statute.

Appellant brings this appeal urging that the Appellee, Oklahoma Tax Commission, hereinafter referred to as "Commission," erred in not finding the Appellant taxpayer exempt from sales tax under 68 O.S.1971, § 1305(p), on various items of equipment used in its operations for the purpose of manufacturing and processing food products. Appellant seeks reversal of the Commission's order and allowance of its claim for refund.

Title 68 O.S.1971, § 1305, provides in pertinent part:

"There is hereby specifically exempted from the tax levied by this Article the gross receipts or gross proceeds derived from the:

\* \* \* \* \* \*

"(p) Sale of machinery and equipment purchased and used by persons establishing new manufacturing or processing plants in Oklahoma, and machinery and equipment purchased and used by persons in the operation of manufacturing plants already established in Oklahoma; provided, this exemption shall not apply unless such machinery and equipment is incorporated into, and is directly used in, the process of manufacturing property subject to taxation under this Article. *The term 'manufacturing plants' shall mean those establishments primarily engaged in manufacturing or processing operations, and generally recognized as such.*" (Emphasis ours)

The ultimate question in this appeal is whether, under the facts, Appellant qualifies as a manufacturer or processor under § 1305(p), supra. We must determine whether or not the specific items claimed by McDonald's, which are part of McDonald's patented processing system, i.e., the shake station; center island counter drink dispenser and soda factory; center island counter griddles or grills; center island toasters; French fry assembly; and fish assembly, are exempt under § 1305(p), supra.

For reversal Appellant sets forth two propositions: (1) Taxpayer is a manufacturer or processor and is, as such, entitled to the sales tax exemption set out in 68 O.S. 1971, § 1305(p); (2) Testimony of the Commission's witnesses was substantially inadmissible and the case should be decided solely on the evidence offered or agreed to by the taxpayer.

Under proposition two it is Appellant's contention that the testimony of Appellee's three witnesses was improperly admitted, claiming it was an attempt to offer opinion testimony as to the ultimate fact in issue, i.e., for the purpose of giving opinions that McDonald's was not a processing operation subject to the terms of the exemption statute.

Appellant cites the general rule found in 31 Am.Jur.2d 494, § 2, that testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial, must be confined to statements of concrete facts within their own observation, knowledge, and recollection—that is, facts perceived by the use of their own senses—as distinguished from their opinions, inferences, impressions, and conclusions drawn from such facts. Appellant cites a long line of Oklahoma cases to support this general rule, including *Hadley v. Ross*, 195 Okl. 89, 154 P.2d 939 (1944), and *Mead v. Hellams*, 200 Okl. 381, 194 P.2d 603 (1948).

We note that these authorities pertain to presentation of evidence in a court of justice and not evidence presented at a hearing held by an administrative

agency. It has been held that the strict rules of evidence are not necessarily applicable to an administrative hearing. See *Muskogee Gas & Electric Company v. State et al.*, 81 Okl. 176, 186 P. 730 (1920). The bulk of the testimony was simply the showing of facts as to how other entities or public agencies recognize the taxpayer. The witnesses testified as to the facts within their own knowledge concerning the subject matter. We do not find that the Tax Commission erred in allowing the admission of such evidence and such was not prejudicial to the taxpayer.

The parties herein stipulated, in part, that Appellant is domesticated and commercially domiciled in Oklahoma; that Appellant is engaged in procuring raw materials from local suppliers which are used in the formulating and preparing of its products; that Appellant is primarily in the business of selling at retail its products which consist of, among other things, hamburgers, fish fillet sandwiches, French fried potatoes, shakes and carbonated soft drinks; that these sales are made from establishments commonly referred to within the industry as "Fast Food Restaurants"; that the raw materials obtained from local suppliers and used in the preparing of the Appellant's product consist of, among other things, precut potatoes for French fries, pre-formed hamburger patties, and pre-formed breaded fish fillets; and that Appellant collects and remits sales tax on all products sold at retail.

In support of its proposition that it is a manufacturer or processor and entitled to the sales tax exemption set out in 68 O.S. 1971, § 1305(p), supra, Appellant relies on *Oklahoma Tax Commission v. Oklahoma Coca-Cola Bottling Co.,* 494 P.2d 312 (Okl. 1972), in which this Court defined manufacturing:

"In *Cain's Coffee Company v. City of Muskogee* (1935) 171 Okl. 635, 44 P.2d 50, quoting from the Illinois case of *Dolese & Shepard Co. v. O'Connell,* 257 Ill. 43, 100 N.E. 235, defined the word 'manufacture' as follows:

"'* * * the word "manufacture" is not to be given its technical meaning. The Century Dictionary defines it as "the production of articles for use from raw or prepared materials by giving these materials new forms, qualities, properties or combinations, whether by hand labor or machine."

"'Whenever labor is bestowed upon an article which results in its assuming a new form, possessing new qualities or new combinations, the process of manufacturing has taken place, whether the thing produced be a small article of commerce or a structure, such as a house, road, or bridge.'"

Appellant urges it comes within the prescribed definition of manufacturing because it produces hamburgers, sandwiches, shakes, soft drinks and French fried potatoes from both raw and prepared materials. Appellant contends these food products have new properties: In the case of cooked foods, a higher temperatures; in the case of shakes and soft drinks, a lower temperature; and in all cases a new appearance, form, and taste. Appellant stresses that none of the equipment and food processing machinery made part of its claim is in any way ancillary or peripheral to the completion of the process.

Appellant cites *Colbert Mill & Feed Co. v. Oklahoma Tax Commission,* 188 Okl. 366, 109 P.2d 504 (1941), for the definition of process:

"* * * To subject to some special process or treatment * * * Specif. (a) To heat, as fruit with steam under pressure so as to cook or sterilize; (b) To subject (esp. raw material) to a process of manufacture, development, preparation for the market, etc.; to convert into marketable form, as livestock by slaughtering, grain by milling, cotton by spinning, milk by pasteurizing, fruits and vegetables by sorting and repacking; * * * *".

Under this definition of processing as including "sorting and repacking," Appellant urges its sophisticated system of food preparation is processing. Appellant therefore

submits that since the definitions of both manufacturing and processing as adopted in Oklahoma apply to its operations, it is entitled to the exemption granted by 68 O.S. 1971, § 1305(p), supra.

Appellant relies heavily on *KFC of Ohio, Inc., d/b/a Kentucky Fried Chicken v. Kosydar, Ohio Board of Tax Appeals,* No. A-408, October 1, 1973, Ohio Tax Reports, P. 11, 313 § 200–682. The Ohio Revised Code, § 5739.01(S), defined manufacturing or processing as "the transformation or conversion of material or things into a different state or form from that in which they originally existed . . ." Appellant urges this definition is similar to the definition contained in the Oklahoma Statutes.

In that case a number of Kentucky Fried Chicken Restaurants sought exemption from the Ohio Sales Tax. The Ohio Board of Tax Appeals found certain items of equipment used in Kentucky Fried Chicken establishments were exempt from Ohio Sales and Use Tax, including dump tables, filtering equipment, pumps, pump motors, filters, frymaster fryers, and skimmers. The Board refused to exempt freezers, refrigerators, walk-in coolers, adding machines, and sinks. The Board reasoned that the items exempted were used in the processing of the food product sold by Kentucky Fried Chicken establishments.

Appellant contends the facts in the *Kentucky Fried Chicken* case are directly analogous to those in the case at bar. There, raw chicken was delivered to the various establishments, separated into pieces, and packed in plastic bags. It was then fried to specification at each establishment prior to sale. In the instant case, raw meat and frozen French fries, frozen fish, buns, and other items are delivered to the McDonald's establishments and are then prepared for sale by use of Appellant's exclusive, patented equipment.

Appellant further relies on the case of *Auxier Scott Supply Company v. Oklahoma Tax Commission,* 527 P.2d 159 (Okl.1974), in which we held that ready-mix concrete mixers mounted on trucks were exempt under § 1305(p), supra, as equipment involved in manufacturing or processing. The trucks mixed a combination of component materials (water, cement, sand, gravel, rock, air-entraining agent, etc.). Appellant urges the mixers are analogous to the shake machine and drink dispenser it uses. These machines mix various components to produce a finished product different from the original ingredients. The shake machine mixes shake mix, syrup and air; the soda factory mixes water, $CO_2$, and syrup. Thus, original materials are changed in composition to arrive at the end product which is salable.

Commission relies on a number of cases from other jurisdictions, the logic and reasoning of which we think substantiates the Commission's position that the preparation of food for immediate retail sale is not manufacturing or processing as defined in § 1305(p), supra, in that such preparation or cooking of food is not "generally recognized" as manufacturing or processing.

Commission first cites *Kansas City v. Manor Baking Company,* 377 S.W.2d 545 (Mo.App.1964), which addressed the issue of whether the baking company was a manufacturer or merchant baker. The Court found Manor was predominately a merchant and retailer, rather than a manufacturer for municipal licensing purposes, although the baking company produced articles in its business. In addition to operating a baking plant, it also operated retail stores, maintained a large force of retail door-to-door salesmen, and maintained retail delivery trucks. The Court said therein:

"Manor always sold solely for its own account, and its 'production' or baking of bread and pastries was never upon advance order of its customers, was never for 'other than a single day's stock' and the products were not packaged as to be susceptible of storage or warehousing. All stales were returned for full credit, so it bore the full sales risk.

"This illustrates that the heavy end of Manor's effort, the success of its business

venture and the essence of its operation, was selling or merchandising. Its production was incidental—necessary because such goods must be baked or produced to be fresh and available for its sale. But in selling it was not doing so to realize a production or manufacturer's profit—had the perishable goods remained in its possession even for a single day there would have been no profit, no commercially successful venture. Rather, it merchandised, and realized its profit and success from perishable, bulky, edible goods which it had to produce for freshness required to effect sales of such foodstuff. Truly, its predominant activity in number and effort of employees, in method of total operation, in source of profit, was as a merchant."

Finally, Appellant asserts it is "primarily engaged in manufacturing or processing operations" as required by § 1305(p), supra, because the evidence reflects that 60–70% of its on premises employment is spent on manufacturing and processing its food products. Appellant submits the fact that its sales premises are in close proximity to its manufacturing and processing operation does not alter the nature of its operation, for many other manufacturers sell direct to the consumer.

On the other hand, Commission contends Appellant is not a manufacturer or processor entitled to the exemption under § 1305(p), noting that Appellant stipulated that it is primarily engaged in the retail selling of its products. We also find that Appellant has ignored the last phrase of § 1305(p), which modifies the whole by specifying that any manufacturing plant must be one which is "generally recognized as such." Thus, unless Appellant's operation is generally recognized as a manufacturing or processing operation, it does not fall within the exemption of § 1305(p).

From our review, we agree with Commission that the *Kentucky Fried Chicken* case is distinguishable because the Ohio exemption statute is not similar to that of Oklahoma's because 68 O.S.1971, § 1305(p), defines

manufacturing plants to mean those establishments primarily engaged in manufacturing or processing operations and generally recognized as such. No such language is found in the Ohio Code.

From our review of the record, we think Appellant's operation is similar to that of the Manor Baking Company. We find Appellant's primary effort, the success of its business venture and the essence of its operation, is the selling or merchandising of its products. Its sales are not to realize the production or manufacturer's profit, for had the hamburgers and other products remained in its possession even for a single day there would be no profit.

In response to Appellant's contention that its drink dispenser should be exempt from payment of sales tax, Commission relies on *The Macke Company v. State Department of Assessments and Taxation*, 264 Md. 121, 285 A.2d 593, (1972). The Court there held that vending machines which mixed and dispensed hot and cold drinks were not "used in manufacture" within the personal property tax exemption. The Court stated:

"\* \* \* in our opinion, the average man would not think of the vending machine operation as 'manufacturing'. True, there are certain aspects of the mechanical and electrical operations of the vending machine which can fit into various aspects of definitions of the word 'manufacturing'. But the over-all view of the operation would be—in the popular sense—predominantly a vending, rather than a manufacturing, operation. The mechanical and electrical operations of the machines in question are sophisticated and somewhat complicated; but the essential operations are basically the same as those used in vending machines 25 or 30 years ago, as the uncontradicted testimony indicates."

The Court went on to state:

"If the language in question is thought to be ambiguous, we give weight to the long standing administrative interpretation of the language for at least the past 25 years as not applying to the machinery

and operation involved in the instant case."

While the Appellant's machines are not coin-operated machines, they are like the machines in the *Macke Company* case in that they mix water and syrup with $CO_2$ at controlled pressures, resulting in carbonated beverages. Also in the instant case it is doubtful that the average man would think of the drink dispensing machine operation or Appellant's fast food operation in general as "manufacturing" and, thus, within the "generally recognized" provision of § 1305(p). As in *Macke, supra,* we are also persuaded by the long standing administrative interpretation of the Commission in not recognizing restaurants as being a manufacturing or processing plant.

Appellant seems to claim that the mere application of labor to an article by either hand or mechanical means constitutes "manufacturing" for purposes of the sales tax exemption. In *Curry Materials Company v. Oklahoma Tax Commission,* 319 P.2d 292 (Okl.1957), the Court said, in quoting another case: .

> "Washing and scouring wool does not make the resulting wool a manufacture of wool. Cleaning and ginning cotton does not make the resulting cotton a manufacture of cotton."

We think the same reasoning applicable to the cooking of products in Appellant's fast food establishment.

In *Roberts v. Bowers,* 170 Ohio St. 99, 162 N.E.2d 858 (1959), the Supreme Court of Ohio held that a restaurateur was not a manufacturer and that personal property used in preparation of food for sale to the general public was not "manufacturing equipment" entitled to be listed at 50% of its value for personal property taxation purposes. In that case, too, the Court distinguished between a manufacturer and a merchant, stating that a merchant, or dealer, sells to earn a profit, and a manufacturer sells to take profit already earned. The Court said:

> " * * * Sale of materials already manufactured in order to take a profit already earned differs greatly from sale

at retail of foods cooked primarily at the time and for the purpose of sale in a retail food-service business."

Finally, the Commission relies on *Dairy Queen of Oklahoma v. Oklahoma Tax Commission,* 205 Okl. 473, 238 P.2d 800 (1951), which it believes to be controlling in the present case. Dairy Queen there appealed an order of the Tax Commission making an assessment of use tax on certain machinery and equipment, freezing machines purchased outside the State and brought into Oklahoma. The parties stipulated most of the machines were leased to other parties under a franchise agreement. However, four of the machines were used in the company's own stores in Tulsa, Oklahoma. It was further stipulated the chief business of the company-owned stores was the retailing of the products of the freezers used in the stores. Dairy Queen contended it was operating a manufacturing plant under 68 O.S. Supp. 1947, § 1310c, subd. (d), which exempts property so used from use tax. That statute also provided, as does § 1305(p) in the instant case, that the term "manufacturing" shall mean those establishments primarily engaged in manufacturing or processing operations and generally recognized as such. This Court held that the freezing machines were not within the exemption from use tax in § 1310 which exempted machinery and equipment purchased and used by persons establishing new manufacturing or processing plants in Oklahoma. We cited a Montana case therein and said:

> "In *Chicago, M. St. P. & P. R. Co. v. Custer County,* 96 Mont. 566, 32 P.2d 8, the Supreme Court of Montana lays down a similar rule, citing numerous authorities in support thereof. It further states that where a person engaged in business other than manufacturing incidentally manufactures something used in his regular business, his business is not thereby transformed into a manufacturing business, citing authorities. The definition of manufacturing or manufacturer above stated, has been approved by this court in *Cain's Coffee Co. v. City of Muskogee,* 171 Okl. 635, 44 P.2d 50.

"Measured by this rule it clearly appears that appellant is not a manufacturer. It does not use the machinery which it purchases and brings into the state for the purpose of manufacturing or processing, but rents or leases these machines to others, who use them to make a product resembling ice cream, which they sell at retail to their customers. This leasing of the machines to other parties on a royalty basis is the principal, primary and practically exclusive business of appellant. As to the use of the four machines in its Tulsa stores such use is so incidental to its real business of retailing its merchandise that it cannot be successfully contended that such use of those machines makes appellant a manufacturer."

We think the case law of other jurisdictions substantiates the Commission's position that the preparation of food for immediate retail sale is not manufacturing under 68 O.S.1971, § 1305(p), supra, and is not "generally recognized" as such. We hold the specific items of equipment claimed by Appellant are not exempt under § 1305(p), supra.

Statutes exempting property from taxation are to be strictly construed against exemptions. *Dairy Queen of Oklahoma, supra.*

For the aforementioned reasons, the order of the Appellee, Oklahoma Tax Commission, is affirmed.

HODGES, C. J., LAVENDER, V. C. J., and DAVISON, IRWIN, BERRY, SIMMS and DOOLIN, JJ., concur.