REVENUE CABINET, COMMON-
WEALTH OF KENTUCKY,
Movant,

v.

JAMES B. BEAM DISTILLING
COMPANY, Respondent.

No. 89–SC–000697–DG.

Supreme Court of Kentucky.

Sept. 27, 1990.

Rehearing Denied Nov. 29, 1990.

Celia M. Dunlap, Revenue Cabinet, Frankfort, for movant.

Bruce F. Clark, Judith A. Villines, Stites & Harbison, Frankfort, for respondent.

## OPINION OF THE COURT

The Kentucky Supreme Court hereby affirms the decision of the Court of Appeals [1] in this matter. This Court adopts the opinion of the Court of Appeals which is as follows:

"This appeal centers on the proper construction to be given KRS 139.480(3) which grants an exemption from sales tax for "energy or energy-producing fuels used in the course of manufacturing, processing, mining or refining to the extent that costs

---

1. Opinion of the Court of Appeals by Hayes, J.    Hayes, Lester and Wilhoit, JJ., sitting.

of the energy or energy-producing fuels exceeds three percent (3%) of the cost of production." The statute states that "cost of production shall be computed on the basis of plant facilities which shall mean all permanent structures affixed to real property at one location." It is this definition of "cost of production" which is the heart of the controversy.

James B. Beam Distillery sought to avail itself of the exemption for its distillery at Clermont, Kentucky. Beam has separate and distinct bottling and warehousing operations located at the Clermont site, but it did not include the costs associated with those operations in its cost of production calculation for the energy exemption because it was claiming the exemption for the distillery alone.

The Board, however, held that the statute required the calculation to be based on the taxpayer's (Beam's) total costs at Clermont, including those unrelated to the distillery (the warehouse and bottling operations). On appeal, the Bullitt Circuit Court concluded that the statute does not require or permit the lumping together of all of a taxpayer's separate and distinct operations "simply because by choice or by chance such operations are conducted on one or more adjoining tracts of land or in one community." We agree and affirm.

■ It seems plain to us that the legislature intended that a taxpayer who seeks the exemption must include in its calculation of cost of production only the permanent structures which contain the operation for which the exemption is sought. Were it otherwise the focus would be shifted to defining "one location," i.e., is "one location" all the facilities in one plant, or one community. What if the operations are separated by fences with separate ingress and egress? Such a criteria seems purely arbitrary and subverts the intent of the legislature in allowing the exemption. It seems only logical that a taxpayer which can demonstrate that the operation for which the exemption is claimed is a truly separate and complete operation, not dependent on the other operations at that site for production of a completed product or process, need not include the costs of the other unrelated operations in its costs of production for that one operation.

■ We are convinced that Beam's application for an exemption satisfies this criteria. While it is true that the majority of the whiskey produced at the Clermont distillery is transported to the on-site warehouse for aging, it is clear beyond dispute that it could be transported anywhere for this separate and discrete operation. In fact, the testimony indicates that ten percent of the product is sold for aging or bottling elsewhere. As stated in *Department of Revenue, etc. v. Allied Drum Service*, Ky., 561 S.W.2d 323 (1978), in its attempt to define manufacturing, "[t]he thread that runs through all these opinions is that material of little or no market value has been converted into a marketable product for its intended use." If Beam sells part of its product, it must be marketable for its intended use without regard to the other operations conducted at the Clermont site. Further, it is undisputed that the operations are distinct from an accounting standpoint.

Finally, we note the following language in *Schenley Distillers, Inc. v. Commonwealth, et rel Luckett*, Ky., 467 S.W.2d 598 (1971), concerning legislative intent:

Although, as the Department argues, tax-exemption statutes are strictly construed against the taxpayer, we also must take into consideration the objective of the legislature in creating particular exemptions to encourage the location and expansion of industries in Kentucky. In our opinion both items herein considered fall within the scope of machinery and materials the legislature intended to exempt.

In this case, we find that Beam's calculation of the cost of production based solely on the distillery operations for which the exemption was sought, squarely fits the intent of the legislation.

The judgment of the Bullitt Circuit Court is affirmed."

STEPHENS, C.J., and GANT, LEIBSON and VANCE, JJ., concur.

WINTERSHEIMER, J., dissents with a separate opinion in which COMBS and LAMBERT, JJ., join.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent because the Board of Tax Appeals correctly interpreted the phrase "cost of production shall be computed on the basis of plant facilities which shall mean all permanent structures affixed to the realty at one location" pursuant to K.R.S. 139.480(3). The assessment of sales and use tax on energy purchased by Beam for use at the Clermont location was correct. The location manufactured bottled alcohol and the manufacturing process commenced with a distilling process and continued through the warehouse for aging and bottling.

The use of energy by Beam at the Clermont location did not meet the standards for an energy use exemption. The use of the plural "structures" clearly indicates an intent that one location could consist of more than one building or more than one isolated phase of manufacturing. If the company believes it needs relief such should come from the legislature rather than the court.

Appropriate statutory construction requires that exemption statutes be strictly construed. *Delta Airlines v. Revenue Cabinet*, Ky., 689 S.W.2d 14 (1985). There is no language in K.R.S. 139.480(3) that shows a legislative intent to allow any taxpayer to divide his manufacturing, processing, mining or refining into operational sections or divisions to determine eligibility for exemption. Statutory modification is the proper remedy for the company. This Court erred when it adopted the Court of Appeals incorrect interpretation of the statute which permits the company to isolate various operations and divisions to determine energy use.

The real question here is whether the distilling, warehousing for aging and bottling functions were all directly involved in the manufacturing activity at the location. Clearly all of the functions carried on by the company were necessary for the manufacturing processing. *Cf. Schenley Distillers, Inc. v. Commonwealth, ex rel Luckett*, Ky., 467 S.W.2d 598 (1971). It is not just the manufacturing process involved but the tax in this case is imposed on the use of energy related fuels by the taxpayer. There is only one taxpayer at the location involved in this case.

COMBS and LAMBERT, JJ., join in this dissent.