43 P.3d 214

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Plaintiff–Appellee,**

v.

**BLUE LINE DISTRIBUTING, INC., Defendant–Appellant.**

No. 1 CA–TX 01–0011.

Court of Appeals of Arizona, Division 1, Department T.

April 4, 2002.

Janet Napolitano, Attorney General By Lisa A. Neuville, Assistant Attorney General, Phoenix, Attorneys for Plaintiff–Appellee.

Brown & Bain, P.A. By Stephen C. Newmark, Maria Salapska, Phoenix, Attorneys for Defendant–Appellant.

**OPINION**

LANKFORD, Judge.

¶ 1 This appeal requires us to decide whether sales to a pizzeria of kitchen equipment, such as an industrial dough mixer, are tax-exempt as equipment used in a "manufacturing" or "processing" operation. See Ariz. Rev.Stat. ("A.R.S.") § 42–5061(B)(1) (Supp. 2001). Taxpayer Blue Line Distributing, Inc. sold the equipment at retail to Little Caesar's Pizza, Inc. Little Caesar's used the equipment in its pizzeria to prepare dough from scratch in making and selling fully-cooked hot pizzas to customer order for off-premises consumption.

¶ 2 The Arizona Department of Revenue ("ADOR") audited Taxpayer for the period from September 1990 through December 1994 and assessed state and local retail transaction privilege and use taxes on its gross proceeds from selling the kitchen equipment. Taxpayer protested the assessment and lost in ADOR's administrative review process, but prevailed on appeal to the Arizona Board of Tax Appeals.

¶ 3 On appeal to the tax court, ADOR succeeded in reinstating its original assessment. The tax court determined that, although dough-making activities technically constitute "manufacturing" or "processing," "Little Caesar's pizza making operation is not a manufacturing or processing operation [and Taxpayer's] sales of machinery and equipment to Little Caesar's for [its retail food sales] operation are not exempt from taxation."

¶ 4 Taxpayer timely appealed. We have appellate jurisdiction. A.R.S. § 12–2101(B) (1994). Our review of the tax court's ruling, a determination of law, is de novo. See Wilder. World, Inc. v. ADOR, 182 Ariz. 196, 198, 895 P.2d 108, 110 (1995). Tax exemption statutes are strictly construed

against exemption. *See Circle K Stores, Inc. v. Apache County*, 199 Ariz. 402, 406, ¶ 9, 18 P.3d 713, 717 (App.2001).

¶ 5 The exemption on which Taxpayer relies is found in A.R.S. § 42–5061(B)(1), which exempts from retail transaction privilege taxation the gross proceeds of sales of:

> Machinery, or equipment, used directly in manufacturing, [and] processing ... operations. The terms "manufacturing", [and] "processing" ... as used in this paragraph refer to and include those operations commonly understood within their ordinary meaning.

¶ 6 Taxpayer's bid for reversal argues that the pizzeria's dough-making enterprise constituted "manufacturing" or "processing." Taxpayer contends that making pizza dough from scratch is "manufacturing" because it places "tangible personal property in a form, composition, or character different from that in which it was acquired, and transforms it into a different product with a distinctive name, character, or use." Ariz. Admin. Code ("A.A.C.") R15–5–120(A).

¶ 7 Focusing on the dough-making aspect alone of the pizzeria's business, Taxpayer finds support in decisions that define "manufacturing" and "processing" as the transformation of raw material into products. *See ADOR v. Sonee Heat Treating Corp.*, 178 Ariz. 278, 279, 872 P.2d 682, 683 (Tax Ct.1994) (manufacturing is making raw materials by hand or machine into a product suitable for use); *G.B. Inv. Co. v. ADOR*, No. 629–88–S, 1989 Ariz. Tax LEXIS 17 at 7–8 (Ariz. Bd. of Tax App. June 20, 1989) (making baked goods from scratch constitutes "manufacturing" within A.R.S. § 42–5061(B)(1) and A.A.C. R15–5–120(A)). Taxpayer further urges that the pizzeria's activities also amounted to "processing" because it converted basic materials into marketable form. *See Employment Sec. Comm'n of Ariz. v. Bruce Church, Inc.*, 109 Ariz. 183, 186, 507 P.2d 108, 111 (1973); *Moore v. Farmers Mut. Mfg. & Ginning Co.*, 51 Ariz. 378, 382, 77 P.2d 209, 211 (1938).

¶ 8 However, the Legislature extended the exemption only to "manufacturing" and "processing" as "commonly understood within their ordinary meaning." A.R.S. § 42–5061(B)(1). That statute is administratively interpreted as exempting "[m]anufacturing [as] the performance *as a business* of an integrated series of operations" that transform personal property into a different product. A.A.C. R15–5–120(A) (emphasis added).[1]

¶ 9 The question is thus not merely whether dough-making in the abstract, or in isolation, can be viewed a manufacturing process. Rather, the exemption depends on whether a pizzeria's business is commonly understood to be a manufacturing or processing operation. The tax court held that "a restaurant is not considered a manufacturing or processing operation as the terms are commonly understood."[2]

---

1. A.A.C. R15–5–120(A) interprets A.R.S. § 42–5061(B)(1), in full, as follows:
   > Machinery or equipment used in manufacturing or processing includes machinery or equipment that constitutes the entire primary manufacturing or processing operation from the initial stage where actual processing begins through the completion of the finished end product, processing, finishing, or packaging of articles of commerce. Manufacturing is the performance as a business of an integrated series of operations which place tangible personal property in a form, composition, or character different from that in which it was acquired and transforms it into a different product with a distinctive name, character, or use.

2. The hearing officer for the Arizona Office of Administrative Hearings also persuasively stated:
   > The operations at the various Little Caesar's locations are not engaged in something which is commonly thought to be manufacturing or processing; they are commonly considered to be a restaurant operation or prepared food sale locations. Although Petitioner presented much testimony and information concerning the location's preparation of pizza and Italian food, the testimony showed it to be just that, preparation of a final food product identified to be sold to consumers. The comparison to a bakery, in reliance on *GB Investment*, fails when the analogy is taken to its logical conclusion. While a bakery may also take a special order for a particular item, they are generically a business which, at the completion of their processing, have available to the public an inventory of a product, much like a manufacturer. In contrast, Little Caesar's only prepares the food product for one customer at a time, as ordered at the time, which is exactly like a restaurant or fast food business.

¶ 10 We hold that, as a matter of law, a restaurant that uses machinery or equipment to make pizza dough from scratch is not commonly understood to be either a "manufacturing operation" or a "processing operation." Those terms ordinarily refer instead to such businesses as commercial glassworks, sausage makers, grain mills, leather goods factories, slaughterhouses, tanneries, and the like. *Cf. Meredith Corp. v. State Tax Comm'n*, 23 Ariz.App. 152, 153, 531 P.2d 197, 198 (1975) (though videotape recorder sold by taxpayer to television station "processed" signals, it was not exempt under predecessor of A.R.S. § 42–5061(B)(1) because television stations not commonly understood to be "processing operations"; listing some activities that constitute processing or manufacturing).

¶ 11 This approach is supported by the evident legislative purpose in granting a tax exemption. The purpose is to encourage manufacturing businesses and investment in manufacturing equipment by exempting sales of such equipment. *See* 71 Am.Jur.2d *State and Local Taxation* § 288 (2001); *Revenue Cabinet v. James B. Beam Distilling Co.*, 798 S.W.2d 134, 135 (Ky.1990); *Comptroller of Treasury v. Disclosure, Inc.*, 340 Md. 675, 667 A.2d 910, 914 (1995); *Sharp v. Tyler Pipe Ind., Inc.*, 919 S.W.2d 157, 160 (Tex. App.1996). Extending the exemption to a pizzeria would not serve this purpose because it would encourage restaurants and not manufacturing.

¶ 12 Persuasive decisions from other jurisdictions support this view. In *HED, Inc. v. Powers*, 84 N.C.App. 292, 352 S.E.2d 265 (1987), the court held that mixers, slicers, scales, pumps, fryers, and assembly tables that the taxpayer sold to its parent company, Hardee's Food Systems, were not sales to a "manufacturing industry or plant" exempted from state sales taxes. The court applied a common-sense approach in the absence of statutory definitions, stating:

[M]anufacturing as that term is commonly understood does not include the mere preparation of food items at a restaurant exclusively for sale on the premises. The essence of Hardee's operation is the selling or merchandising of its products, not production. Moreover, Hardee's food preparation is significantly different from the intricate and elaborate industrial operations that have been classified as manufacturing in the past.

352 S.E.2d at 267. Contrary to Taxpayer's contention, *HED* cannot be distinguished on the ground that the statute in question concerned sales to manufacturing "plant[s]." The focus of the court's analysis was not on whether a restaurant constituted a "plant," but instead on whether a restaurant's use of food preparation equipment is within the common understanding of "manufacturing."

¶ 13 Another case involving retail food sales that rejected tax exemption is *McDonald's Corp. v. Oklahoma Tax Comm'n*, 563 P.2d 635 (Okla.1977). The statute exempted sales of machinery and equipment "purchased and used by persons in the operation of manufacturing plants ...." The statute provided: "The term 'manufacturing plants' shall mean those establishments primarily engaged in *manufacturing or processing operations, and generally recognized as such.*" [3] 563 P.2d at 636 (emphasis added). The court held that the components of McDonald's patented food processing system, including the shake station, center island counter drink dispenser and soda factory, and french fry and fish assembly, were not used in such operations. The court explained that preparing food for immediate retail sale is not generally recognized as manufacturing or processing:

[U]nless Appellant's operation is generally recognized as a manufacturing or processing operation, it does not fall within the exemption of § 1305(p)....

We find Appellant's primary effort, the success of its business venture and the essence of its operation, is the selling or merchandising of its products. Its sales are not to realize the production or manufacturer's profit ....

**3.** The intended scope and meaning of the governing statute in *McDonald's Corp.* was thus virtually the same as that of A.R.S. § 42–5061(B)(1).

563 P.2d at 639. Precisely the same can be said of the pizzeria. *See also Coachman, Inc. v. Norberg,* 121 R.I. 316, 397 A.2d 1320 (1979) (restaurant not engaged in "manufacturing" as that term is commonly understood); *Roberts v. Bowers,* 170 Ohio St. 99, 162 N.E.2d 858, 861 (1959) (same).

¶ 14 The cases on which Taxpayer relies do not support its position. It is true that *RenalWest L.C. v. ADOR,* 189 Ariz. 409, 943 P.2d 769 (App.1997), and *State Tax Comm'n v. Anderson Dev. Corp.,* 117 Ariz. 555, 574 P.2d 43 (App.1977), may be read to hold that the identity of the equipment user and the location of use did not affect the taxpayers' entitlement to exemption under the particular exemption provisions at issue. However, unlike the situation here, neither case concerned an exemption whose applicability depended on whether the equipment in question was used in a particular, "generally recognized" kind of business "operation."

¶ 15 Another case relied upon by Taxpayer did not involve a retail food business. The taxpayer in *Noreast Fresh, Inc. v. Commissioner of Revenue,* 50 Mass.App.Ct. 352, 737 N.E.2d 17 (Mass.App.2000), bought raw vegetables from others and produced from them a variety of prepackaged products for sale to supermarket chains. The court held that the taxpayer's activities constituted "manufacturing." Unlike Arizona's statute, the Massachusetts exemption did not require that the machinery in question be used in a "manufacturing operation." Moreover, under the very different facts of *Noreast Fresh,* the result might well be the same in Arizona.

¶ 16 Taxpayer's only pizzeria case, *Fleet Pizza, Inc. v. Commonwealth,* 119 Pa. Cmwlth. 463, 547 A.2d 523 (1988), *aff'd* 521 Pa. 527, 557 A.2d 719 (1989), is distinguishable on the law. The Pennsylvania statute specifically provided that a person engaged in making bakery products was a "manufacturer" within the use tax exemption statute, and the Pennsylvania courts had previously held that pizza was a bakery product. Other decisions on which Taxpayer relies are similarly distinguishable and unpersuasive.[4]

¶ 17 The tax court correctly held that Taxpayer's gross proceeds from selling an industrial dough mixer and related equipment to a pizzeria were not exempt from retail transaction privilege taxation as machinery or equipment used directly in a manufacturing or processing operation within A.R.S. § 42–5061(B)(1). Because of our resolution of this appeal, we need not consider ADOR's contention that some of the items for which Taxpayer claimed exemption were ineligible for exemption in any event because they constituted "hand tools." Taxpayer does not prevail on appeal, and we therefore deny its request for an award of attorney's fees on appeal under A.R.S. § 12–348(B)(Supp.2001).

¶ 18 The judgment is affirmed.

CONCURRING: JOHN C. GEMMILL, Presiding Judge, and JAMES B. SULT, Judge.

4. *H.H. Kohlsaat & Co. v. O'Connell,* 255 Ill. 271, 99 N.E. 689 (1912) (maker of "bakers' goods and restaurant supplies" was organized for "manufacturing and mercantile" purposes within tax valuation statute); *State v. Lanasa,* 151 La. 706, 92 So. 306 (1922) (commercial bakery using machinery was manufacturer); *State v. E.I. Young Co.,* 157 La. 845, 103 So. 186 (1925) (following *Lanasa* as to operator of modern baking plant employing average of 55 persons annually); *State v. Amick,* 171 Md. 536, 189 A. 817 (1937) (route driver for commercial bakery who occasionally sold goods of delivery truck was not "hawker or peddler" required to be licensed as such); *Comm'r of Corps. & Taxation v. Assessors of Boston,* 321 Mass. 90, 71 N.E.2d 874 (1947) (multimillion dollar food processing companies constituted "manufacturing corporations" entitled to exemption); *State v. Hennessy Co.,* 71 Mont. 301, 230 P. 64 (1924) (retail mercantile company that operated retail bakery with annual business exceeding $15,000 was "manufacturer" liable for quarterly license fee); *Nickles v. Echelberger,* 31 N.E.2d 474 (Ohio App.1935) (bakery owner's route drivers were exempt from manufacturer selling its own products); *Commw. v. Snyder's Bakery,* 348 Pa. 308, 35 A.2d 260 (1944) (operator of plant equipped with machinery to make potato chips was exempt from mercantile license tax as "manufacturer"); *Caffee v. City of Portsmouth,* 203 Va. 928, 128 S.E.2d 421 (1962) (bakery that sold its products in showroom at front of its premises was not exempt from retail merchant's license tax); *Gen. Baking Co. v. State,* 62 Wash.2d 18, 380 P.2d 727 (1963) (baker who sold goods at leased locations in grocery chain and at its own stores was liable for wholesaling functions tax).